**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LISANDRO RIVERA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 06 C 0734 |
| CHICAGO POLICE OFFICERS JOHN J. ) | Magistrate Judge Susan E. Cox |
| BURKE, STAR NO. 3267 and F. ) | |
| GONZALEZ, STAR NO. 12316, ) | |
| Individually and as employees/agents of the ) | |
| CITY OF CHICAGO, a municipal ) | |
| Corporation, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Officers John J. Burke and Francisco Gonzalez (collectively referred to as "Defendants" or "Defendant Officers") have moved the Court to grant summary judgment against plaintiff Lisandro Rivera ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 56(c), on the two counts that remain in Plaintiff's complaint. For the reasons provided below, the Court grants Defendants' motion and enters judgement in favor of Defendants.

**I.      Background**

As required for purposes of summary judgment, the facts here are presented in the light most favorable to the nonmoving party, the Plaintiff Lisandro Rivera.[1]

**A.      Traffic Stop and Arrest**

---

[1] Citations to the record are in the following form: Plaintiff's Response to Defendants' LR 56.1(a) Statement is cited as PR ¶ ____ ; Plaintiff's Amended LR 56.1(b)(3)(C) Statement of Additional Facts is cited as PSOAF ¶ ___.

On February 7, 2005 at approximately 11p.m., Plaintiff was driving southbound on the 2400 block of Springfield when he was ordered by police, on a loud speaker, to pull over.[2] According to Defendants, they pulled him over for failing to display a front license plate and for hanging objects from his rearview mirror.[3] Plaintiff had a rosary and a baby bootie that was about an inch and a half big hanging about two inches down from his rearview mirror by a one inch string shoelace.[4]

Defendants and Officer Grissett (who is not a defendant) then approached his vehicle.[5] One of the officers told Plaintiff to exit his vehicle, which he did.[6] Upon exiting the vehicle, Plaintiff attempted to hand the African American officer his driver's license and registration.[7] He was told by the officer that he did not need that information at that moment.[8] The African American officer then searched Plaintiff's body while Plaintiff placed his hands on the hood of the police squad car.[9] At the same time, Officer Burke began searching Plaintiff's vehicle.[10] Officer Burke ripped out the center console of Plaintiff's vehicle and found one plastic baggy containing four small, knotted baggies, each containing what was later confirmed to be cocaine.[11] Plaintiff was then placed under

---

[2] PR ¶ 8; PSOAF ¶ 12.

[3] PR ¶ 8.

[4] PSOAF ¶ 7.

[5] PSOAF ¶ 12.

[6] PSOAF ¶ 13.

[7] PSOAF ¶ 13.

[8] PSOAF ¶ 13.

[9] PSOAF ¶ 14.

[10] PSOAF ¶ 19.

[11] PSOAF ¶ 24.

arrest and asked for his driver's license, which, along with the property from his pockets, was on the hood of the vehicle where he had been told to put his hands.[12] Officer Gonzales ran Plaintiff's driver's license and learned that it was suspended.[13]

**B.      Resulting Charges**

The incident on February 7, 2005 resulted in four charges being brought against Plaintiff: (1) possession of a controlled substance in violation of 720 ILCS 570.0/402-C; (2) driving on a suspended driver's license in violation of 625 ILCS 5.0/6-303-A; (3) driving with obstruction of driver's view in violation of the Municipal Code of Chicago, Section 9-40-250(B) ; and (4) failure to display a front license plate in violation of the Municipal Code of Chicago, Section 9-76-160(A).[14] Prosecutors *nolle prosequied* the charge for driving with a suspended driver's license, non-suited the traffic offenses, and proceeded on a charge for possession of a controlled substance.[15]

**C.      Criminal Proceedings**

On March 3, 2005 Defendant Officer Burke testified at a preliminary hearing in the Circuit Court of Cook County.[16] He testified about the events on February 7, 2005, specifically, that he noticed items hanging from Plaintiff's rearview mirror, curbed the vehicle, a check revealed that Plaintiff's driver's license was suspended, resulting in Plaintiff being placed in custody.[17] Officer

---

[12] PR ¶ 10 (though Plaintiff's counsel argued in open court that Plaintiff was under arrest prior to this time, upon being stopped by the Defendants, because he was not free to leave).

[13] PR ¶ 11.

[14] PR ¶ 12.

[15] PR ¶ 20.

[16] Transcript of Oral Argument at 1, *The People of the State of Illinois v. Rivera*, No. 05 MC1 110230 (March 3, 2005).

[17] Transcript of Oral Argument at 3, *The People of the State of Illinois v. Rivera*, No. 05 MC1 110230 (March 3, 2005).

Burke testified he did a search of Plaintiff's vehicle after Plaintiff was placed in custody and found a plastic baggy containing four smaller knotted bags.[18] He testified those items found in the vehicle were inventoried and later tested positive for 1.4 grams of cocaine.[19] On cross examination, Officer Burke testified that he did not recall what was hanging from Plaintiff's rearview mirror, but believed one item was a rosary and also testified that obstruction of view was the sole basis for the traffic stop.[20]

On July 14, 2005, Plaintiff testified at a hearing on Plaintiff's Motion to Quash and Suppress Evidence in the Circuit Court of Cook County.[21] Plaintiff testified that he was pulled over and one of the Defendant Officers asked him to step out of his vehicle, at which point he put his hands on the vehicle while one officer searched him and another officer searched his vehicle.[22] The officer that searched the vehicle, according to Plaintiff, ripped out the center console of his car and found drugs in his vehicle.[23] At the time of the search, Plaintiff testified he had not yet shown Defendants his driver's license but, after the search, one of the Defendant Officers ran his driver's license, learned it was suspended, and then arrested him.[24]

Officer Gonzalez and Officer Burke also testified at this hearing. First, Officer Gonzalez

---

[18]*Id.* at 4.

[19]*Id.*

[20]*Id.*

[21]Transcript of Oral Argument at 1, *The People of the State of Illinois v. Rivera*, No. 05CR6341 (July 14, 2005).

[22]*Id.* at 12-13.

[23]*Id.* at 15.

[24]Transcript of Oral Argument at 14-16, *People of the State of Illinois v. Rivera*, No. 05CR6341 (July 14, 2005).

testified that the reason for the traffic stop was twofold: no front license plate and obstruction of view.[25] When asked what items were hanging from Plaintiff's rearview mirror, Officer Gonzalez testified that he did not remember.[26] Relating to the arrest, Officer Gonzalez testified that he heard Officer Burke ask Plaintiff for his driver's license, Officer Burke ran his driver's license, found it was suspended, asked Plaintiff to step out of the vehicle, and Officer Burke then placed him under arrest for having a suspended license.[27] Officer Gonzalez testified that it was after the arrest that a search of Plaintiff's vehicle revealed suspect cocaine.[28] On cross examination Officer Gonzalez testified he did not believe he removed the objects hanging from the rearview mirror before driving Plaintiff's vehicle back to the station and, when asked if he would have driven the vehicle if it was not safe, he answered no, he would not. In contrast, Officer Burke testified that he did not check Plaintiff's driver's license but, rather, Officer Grisset or Officer Gonzalez ran the check of the license.[29] Officer Burke testified that after they checked Plaintiff's driver's license and learned it was suspended, they placed Plaintiff under arrest and then searched the vehicle.[30]

In support of his motion to suppress, Plaintiff's counsel referred the state court judge to the inconsistencies in the Defendant Officers' testimonies (*i.e.,* whether Plaintiff was initially stopped solely for obstruction of view or whether Plaintiff was stopped for obstruction of view and for

---

[25]*Id.* at 25.

[26]*Id.* at 28.

[27]*Id.* at 25-27.

[28]*Id.* at 27.

[29]*Id.* at 39.

[30]*Id.* at 38-39.

missing a front license plate).[31] Plaintiff's counsel also directed the court to testimony by Officer Gonzalez that he drove Plaintiff's vehicle back to the station, without removing the items hanging from the rearview mirror.[32] In concluding his argument, Plaintiff's counsel contended that Defendants not only pulled Plaintiff over illegally, but they searched him and his vehicle illegally, all prior to finding out that his driver's license was suspended.[33]

The state court agreed that the search was illegal and further stated that the objects, which Plaintiff admitted had been hanging from his rearview mirror at the time of the traffic stop, the baby booty and the rosary, "would not obstruct one's view out the front window."[34] The state court found that because of inconsistencies in the Defendant Officers' testimony, it had "no choice but to side with the version [of facts] given by the [Plaintiff] in terms of what happened when he was stopped; that he was not asked for his driver's license."[35] The state court granted the motion to suppress evidence and ruled there was no basis for the stop of the vehicle.[36] Plaintiff's criminal charge for possession of a controlled substance was then *nolle prosequied*.[37]

**D.    Section 1983 Action**

Following his criminal charge being *nolle prosequied*, on February 8, 2006, Plaintiff filed

---

[31]Transcript of Oral Argument at 42, *The People of the State of Illinois v. Rivera*, No. 05CR6341 (July 14, 2005).

[32]*Id.*

[33]*Id.*

[34]*Id.* at 43.

[35]*Id.*

[36]*Id.*

[37]PR ¶ 21.

a five-count civil rights action pursuant to 42 U.S.C. §1983 and Illinois state law against both Officers Burke and Gonzalez ("Complaint"). Plaintiff claims the Officers lacked probable cause to stop him while he was driving his car. Specifically, Plaintiff alleges: (1) a Section 1983 claims for false arrest / unlawful detention; (2) state law claims for malicious prosecution; (3) false imprisonment; (4) assault and battery; and (5) indemnification.

On February 11, 2006, Rivera stipulated to dismiss counts III (false imprisonment), IV (assualt), and V (indemnification) with prejudice. Presently before the Court is Defendants' summary judgment motion with regard to the remaining claims: the Section 1983 false arrest claim (Count I) and Plaintiff's state law malicious prosecution claim (Count II).

E.      **Hearing on Summary Judgment**

On January 16, 2008, the Court heard oral argument on Defendants' Motion for Summary Judgment as to Plaintiff's false arrest and malicious prosecution claims. At that hearing Plaintiff's counsel contended that a jury could find that Defendants lacked an objective reasonable belief that there was an obstruction of view and accordingly, there was no probable cause to pull Plaintiff's vehicle over and arrest him. Plaintiff's counsel asserted Plaintiff was placed under arrest "when he was not free to leave, and that was when he was pulled over by the police." Plaintiff's counsel also conceded that the discovery of the cocaine after the traffic stop gave Defendants an independent basis to arrest Plaintiff. In open court Plaintiff's counsel stated as much when he said "damages would be limited to the time [Plaintiff] is forced out of the car, searched, put in the back of a squad car...then [Defendants] find or claim to find cocaine...at the point the cocaine is found, does that give [Defendants] probable cause, yes." This means Plaintiff's false arrest claim, and damages therefrom, relate only to the brief time beginning when Plaintiff was ordered to pull over, exit his

vehicle, and while he was standing outside his vehicle during the search.

## II. Legal Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[38] To prevail on a motion for summary judgment, then, a party must present evidence that demonstrates the absence of a genuine issue of material fact.[39] A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[40] The party seeking summary judgment must identify the portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes shows an absence of a genuine issue of material fact.[41] The evidence presented by the non-movant is to be believed and all justifiable references are to be drawn in his or her favor.[42] With respect to claims under 42 U.S.C. § 1983, the Court need only address whether Defendants are protected by qualified immunity if the Court finds, as a threshold matter, that the facts when viewed in the light most favorable to Plaintiff establish that his constitutional rights were violated.[43]

## III. Analysis

This case involves a traffic stop which led police to search the Plaintiff's vehicle. The

---

[38] Fed.R.Civ.P. 56(c).

[39] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[40] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[41] *See* Fed..R.Civ.P. 56(c); *see also Celotex Corp.*, 477 U.S. 324.

[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[43] *See Russell v. Harms,* 387 F.3d 458, 462-63 (7th Cir. 2005).

cocaine found by the Defendant Officers resulted in charges being filed against him, then dropped after the evidence was suppressed. Plaintiff argues summary judgment is inappropriate because factual disputes exist relating to the reason he was initially pulled over, implicating a probable cause question, and because of conflicting testimony by Defendant Officers as to what happened thereafter. **A. False Arrest (Count I)**

In his brief in opposition to Defendants' motion, Plaintiff principally argues that the issue of whether the Defendant Officers had probable cause to stop his vehicle necessarily depends on the credibility of the witnesses. According to Plaintiff, at least one of the Defendant Officers told him this was a random traffic stop. He also contends that the Defendant Officers' testimony is inconsistent about the chronology of events that transpired after the traffic stop was made.

**i.     Probable Cause Standard**

Where probable cause to arrest is found to exist, it "is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest ... or malicious prosecution."[44] This rule applies even where the police allegedly acted upon a malicious motive.[45] "Police officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offence."[46] The evaluation of probable cause is not subjective. The Court looks to the facts "'as they would have appeared to a reasonable person in

---

[44]*Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006).

[45]*Mustafa*, 442 F.3d at 547.

[46]*Id.* (*citing kelley v. Myler,* 149 F.3d 641, 646 (7th Cir. 1998)).

the position of the arresting officer'" and not as "'an omniscient observer would perceive them.'"[47] For Plaintiff to prevail on his two claims, then, he must show that there was no probable cause for his arrest.[48]

## ii. Relevant Illinois Law

The Municipal Code of Chicago provides that it is an offense to "drive a motor vehicle with any sign, poster, card, sticker, or other non-transparent material upon the front windshield ... or roof which materially obstructs, obscures or impairs the view from both within or without the vehicle."[49] This same rule is codified in Illinois law.[50] The Municipal Code of Chicago also provides that both a front and rear license plate must be attached to the vehicle.[51] At issue here is Defendants stopping Plaintiff's vehicle based on the presence of items hanging from Plaintiff's rearview mirror.

## iii. Probable Cause Determination

Here, Plaintiff claims that no probable cause existed for the stop. Plaintiff references the ruling in the underlying state criminal case in which the judge found, after hearing testimony, that the objects hanging from the rearview mirror "would not obstruct one's view out the front window."[52] In making this ruling, the state court found that the Defendant Officers were inconsistent about the chronology of events that occurred following the stop and, accordingly found

---

[47] *Id.*

[48] *See Williams v. Rodriguez,* 2007 WL 4258679, *4 (C.A. 7(Ill.)).

[49] Municipal Code of Chicago, Section 9-40-250(B).

[50] 625 ILCS 5/12-503(c)(providing that "[n]o person shall drive a motor vehicle with any objects placed or suspended between the driver and the front windshield ... which materially obstructs the driver's view.").

[51] Municipal Code of Chicago, Section 9-76-160(A).

[52] Transcript of Oral Argument at 43, *The People of the State of Illinois v. Rivera*, No. 05CR6341 (July 14, 2005).

"no choice but to side with the version given by [Plaintiff] in terms of what happened when he was stopped..."[53] The state criminal court then suppressed the evidence: the cocaine found during Defendants' search of Plaintiff's vehicle. Here, Plaintiff contends that the Court should similarly rule that the stop was pretextual and that there was no probable cause for Plaintiff's subsequent detention.

Plaintiff's reliance on the state court's ruling is misplaced. First, the state court's findings regarding Plaintiff's arrest are not binding on this Court as to Plaintiff's section 1983 claim.[54] Second, the issue before the state criminal court was whether the exclusionary rule applied. The exclusionary rule bars evidence obtained from, or as a result of, lawless official acts.[55] That doctrine is not applicable here. As explained in *Townes v. City of New York*, the value of the Fourth Amendment is not served if Plaintiff, who illegally possessed cocaine, is allowed to reap financial benefit from his arrest.[56] Even if Defendants lacked probable cause to stop Plaintiff's vehicle, they certainly had probable cause to arrest him upon discovery of the cocaine. As found in *Townes*, a "lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."[57] Plaintiff's argument, therefore, that his vehicle was searched before Defendants

---

[53] *Id.*

[54] *See Schultz v. Thomas,* 832 F.2d 108, 111 (1987)(finding that the state criminal court's findings and opinion regarding the plaintiff's arrest and subsequent prosecution were irrelevant to an adjudication of the plaintiff's civil rights claim).

[55] *See Costello v. United States,* 365 U.S. 265, 280 (1961)(defining the 'fruit of the poisonous tree' doctrine).

[56] 176 F.3d 138, 148 (2d Cir. 1999).

[57] *Id.* at 149.

checked his driver's license, in other words that the search was illegal because it took place before his arrest, is irrelevant to Plaintiff's false arrest claim. Whether it was legal for Defendants to search Plaintiff's vehicle when they did, depending on when they actually arrested him, simply has no bearing on a false arrest analysis.

Plaintiff, in contrast to arguments presented in state court, is not arguing an illegal search in this case but is, rather, asserting an opposite position to that which he argued in state court. In state court Plaintiff argued he was not arrested until *after* Defendants checked his driver's license, which was *after* the search. In the criminal proceedings those facts would warrant the judge's ruling that the search was illegal. In Plaintiff's civil rights action, however, which is before this Court, Plaintiff argues that he was in custody immediately following the traffic stop.

But as noted above, the only question the Court need answer is whether, under the objective standard, there was probable cause to stop Plaintiff for the obstruction of view charge. Plaintiff claims it was unreasonable for Defendants to believe that the rosary and baby bootie hanging from Plaintiff's rearview mirror were an obstruction of view because no reasonable officer could possibly find these objects obstructed Plaintiff's view. Plaintiff also claims Defendants, in fact, did not believe these items obstructed his view because when asked why they were stopping him, one officer told him it was a routine traffic stop and did not say anything about being stopped for obstruction of view.[58] The probable cause analysis, however, does not involve an officer's subjective reason for making the arrest.[59] As explained by the Supreme Court in *Whren v. United States,* whether an action is reasonable under the Fourth Amendment is determined objectively "whereby,

---

[58] PSOAF ¶20.

[59] *Williams,* 2007 WL 4258679, *4.

'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'"[60] The only issue is whether a reasonable officer with the same information known to Defendants at the time of the traffic stop, would have had probable cause to stop Plaintiff.

The fact that one of the officers stated his subjective reasons for stopping the vehicle - that the officers were doing routine stops - does not invalidate the arrest.[61] In *United States v. Smith*, the court found probable cause for a stop based only on the presence of an air freshener hanging from the rearview mirror, despite the officer's subjective suspicions of the vehicle.[62] The Court found that probable cause existed for the stop based on the presence of the air freshener regardless of what the officer believed because the "Fourth Amendment analysis is objective" in nature.[63] In *Williams v. Rodriguez* the plaintiff was stopped for a minor traffic violation, parking on the side of the road, and subjected to a full custodial arrest for that violation.[64] The court held the facts known to the officer, when viewed objectively, were sufficient to arrest the plaintiff for the traffic violation without violating the Fourth Amendment, despite the fact that the officer's "subjective reason for making the arrest was driving under the influence." Also, in *Whren, supra*, the Supreme Court reiterated its

---

[60]*Id. (quoting Whren v. United States,* 517 U.S. 806, 813 (1996)).

[61]*See Duncan v. Fapso*, 2007 WL 528860, *2 (7th Cir. 2007)(finding that because the officer had probable cause to make an arrest for criminal trespass, it did not matter that the officer announced he was arresting the plaintiff for possession of drugs, so long as he had probable cause to arrest for *any* offense); *see also Devenpeck v. Alford,* 543 U.S. 146, 155 (2004)(noting that while it is good police practice to inform a person of the reason for his or her arrest, it is not constitutionally required).

[62]80 F.3d at 219.

[63]*Id.* at 219.

[64]*Williams,* 2007 WL 4258679 at *6.

previous finding that "flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification," noting that a traffic violation arrest "would not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search.'"[65] Finally, in *Duncan v. Fapso,* the court held it simply did not matter that the officer announced he was arresting the plaintiff "for possession of drug paraphernalia so long as he had probable cause to arrest for *any* offense."[66] There the court found the officer had probable cause to arrest the plaintiff for criminal trespass before the officer initiated the search of the plaintiff and found a crack pipe, so the search was sustained as one incident to an arrest for that offense.[67] In this case, the objects hanging in the rearview mirror, of which there is no dispute that they were in fact present, were sufficient to warrant the Defendant Officers believing an offense had been committed.

Plaintiff's argument that the rosary and baby bootie did not materially obstruct his view, as the Municipal Code of Chicago defines the violation, is also misplaced. For purposes of the probable cause analysis the Court is not concerned with the particular length of the baby bootie or precisely how low it was hanging from the rearview mirror. The propriety of the traffic stop does not depend on whether Plaintiff was actually guilty of committing a traffic offense by driving a vehicle with a material obstruction in view of the windshield.[68] The pertinent question is, rather, whether it was reasonable for Defendants to believe that the Plaintiff's view was materially impaired

---

[65]517 U.S. at 813.

[66]2007 WL 528860, *2 (7th Cir. Feb. 15, 2007).

[67]*Duncan,* 2007 WL 528860 at *2.

[68]*See United States v. Cashman,* 216 F.3d 582, 587 (7th Cir. 2000).

due to the items hanging from the rearview mirror.⁶⁹ The Court finds an officer in the position of the Defendant Officers passing or approaching Plaintiff's vehicle could reasonably think the objects hanging, in fact, materially obstructed Plaintiff's view and that Plaintiff was, thus, violating the law by operating his vehicle.⁷⁰ This conclusion is objectively reasonable under the precedent set forth by the Seventh Circuit and Illinois state law.⁷¹ Focusing only on whether Defendants had probable cause to stop Plaintiff's vehicle for obstruction of view, as required for purposes of this motion, the Court finds the stop did not violate Plaintiff's Fourth Amendment Rights and grants Defendants' motion for summary judgment on the false arrest claim.⁷²

**B.      Malicious Prosecution (Count II)**

Plaintiff contends that after the arrest, Defendants maliciously prosecuted the criminal charges brought against him. Illinois law provides a malicious prosecution claim requires a plaintiff to show: "'(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.'"⁷³ As addressed above, once the cocaine was found, Defendants had probable cause to

---

⁶⁹*See Cashman,* 216 F.3d at 587(finding that whether the plaintiff was guilty of a traffic offense because of a cracked windshield does not affect the propriety of the traffic stop).

⁷⁰*See Chashman,* 216 F.3d at 587.

⁷¹*See Smith,* 80 F.3d at 219(holding there was probable cause to stop the vehicle even if the sole reason for the traffic stop was the presence of an air freshener hanging from the rear-view mirror); *see also People v. Alvarez,* 243 Ill. App. 3d 933, 939 (Ill. App. Ct. 1993)(holding the initial stop was justified upon the presence of objects hanging from the rearview mirror); *People v. Mendoza,* 234 Ill. App. 3d 826, 839 (Ill. App. Ct. 1992)(finding that a traffic stop because of fuzzy dice and other items hanging from the rearview mirror was proper).

⁷²*See Smith,* 80 F.3d at 219.

⁷³*Joiner v. Benton Comm. Bank,* 82 Ill.2d 40, 45 (Ill. 1980)(*quoting Ritchey v. Masksin,* 71 Ill.2d 470, 475 (1978).

charge and arrest Plaintiff. Plaintiff's assertions that the Defendant Officers lied, later, about what occurred during the stop simply does not vitiate probable cause. It is well-settled that the existence of probable cause is a complete defense to a malicious prosecution claim.[74] There is also an absence of evidence that shows that Defendants had any malice towards Plaintiff, which is an additional required element to prevail on a claim for malicious prosecution. Therefore, the Court grants Defendants' motion for summary judgment on the malicious prosecution claim (Count II).

## C. Qualified Immunity

Defendants assert they are protected by qualified immunity. If a government official's conduct "does not violate clearly established statutory or constitutional rights that a reasonable person would know about," qualified immunity protects the officer from civil liability while performing discretionary functions.[75] As explained above, the evidence shows Plaintiff had probable cause to conduct the traffic stop and to detain Plaintiff. The Court, thus, need not examine whether the defense of qualified immunity would protect Defendants in this case. Qualified immunity is only addressed by the Court if, as a threshold matter, it was found Defendants had insufficient probable cause to justify Plaintiff's arrest.[76]

---

[74] *Mustafa*, 442 F.3d at 547.

[75] *Id.* at 548.

[76] *Russell,* 387 F.3d at 462-63.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment in its entirety.

**IT IS SO ORDERED**

**ENTERED: February 7, 2008**

UNITED STATES MAGISTRATE JUDGE